EXHIBIT
A to

EXHIBIT
2

# 公 证 书

## 中华人民共和国上海市东方公证处

# 裁 决 书

## Arbitral Award

上海国际经济贸易仲裁委员会(上海国际仲裁中心)

Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)

# 上海国际经济贸易仲裁委员会

## （上海国际仲裁中心）

## 裁　决　书

申　请　人：中电电气（上海）太阳能科技有限公司

住　　　所：上海市松江区小昆山镇港德路 68 号 2 幢

代　理　人：胡　梅　北京市金杜律师事务所上海分所律师

　　　　　　郁斯敏　北京市金杜律师事务所上海分所律师

　　　　　　刘　倩　北京市金杜律师事务所上海分所律师

被申　请　人：LUMOS LLC

住　　　所：3550 Frontier Avenue, #C2,Boulder,United States

代　理　人：熊　伟　广东敬海律师事务所上海分所律师

　　　　　　高　雅　广东敬海律师事务所上海分所律师

上　　海

二〇一四年六月十三日

# 裁 决 书

〔2014〕沪贸仲裁字第 138 号

中国国际经济贸易仲裁委员会上海分会（现已更名为"上海国际经济贸易仲裁委员会"，同时启用"上海国际仲裁中心"的名称，以下简称"本会"）根据申请人中电电气（上海）太阳能科技有限公司（下称"申请人"）和被申请人 LUMOS LLC（下称"被申请人"）签订的编号为 S69020043 的《销售合同》中的仲裁条款，以及申请人于 2013 年 3 月 22 日向本会提交的仲裁申请，在申请人办理了预缴仲裁费等相关手续后，于2013 年 4 月 1 日受理了上述系争《销售合同》项下争议仲裁案。案件编号为 SG2013023。

本案仲裁程序适用 2012 年 5 月 1 日起施行的《中国国际经济贸易仲裁委员会上海分会仲裁规则》（以下简称"《仲裁规则》"）。

本会秘书处（以下简称"秘书处"）于 2013 年 4 月 1 日向申请人及被申请人发出了受理通知/仲裁通知、《仲裁规则》及《仲裁员名册》，并向被申请人寄送了申请人提交的仲裁申请书和附件材料。

根据《仲裁规则》的规定，本案由三名仲裁员组成仲裁庭进行审理。申请人选定陈刚先生为仲裁员；被申请人未能在《仲裁规则》规定的期限内选定或委托本会主任指定仲裁

员，本会主任根据《仲裁规则》第二十二条第（一）款为其指定刘颖先生为仲裁员；鉴于申请人与被申请人未能按照《仲裁规则》的规定共同选定或共同委托本会主任指定首席仲裁员，本会主任根据《仲裁规则》第二十二条第（四）款的规定指定刘晓红女士担任首席仲裁员。前述三位仲裁员均签署了《仲裁员声明书》，于 2013 年 5 月 27 日组成仲裁庭共同审理本案。仲裁庭决定于 2013 年 6 月 27 日进行开庭审理，秘书处于 2013 年 5 月 27 日向申请人和被申请人寄送了《仲裁庭组成通知》及《开庭通知》。

被申请人于 2013 年 6 月 20 日提交了延期开庭申请，秘书处于 2013 年 6 月 21 日将该文件转寄申请人及仲裁庭，并提请申请人发表书面评述意见。申请人于 2013 年 6 月 24 日提交了对被申请人前述申请的书面评述意见，秘书处于同日将该文件转寄被申请人及申请人。仲裁庭经合议后，对于被申请人的延期开庭申请予以同意，并委托秘书处于 2013 年 6 月 24 日将上述决定函告双方当事人。

仲裁庭决定本案延期至 2013 年 9 月 14 日开庭，秘书处于 2013 年 7 月 29 日向双方当事人函寄了延期开庭通知。后仲裁庭决定将原定于 2013 年 9 月 14 日上午的开庭调整于同日下午，委托秘书处于 2013 年 8 月 5 日将该事宜函告双方当事人。

被申请人于 2013 年 9 月 11 日提交了管辖权异议，秘书

2

处于同日将该文件转寄申请人及仲裁庭，并提请申请人对该文件发表书面评述意见。申请人于 2013 年 9 月 12 日提交了对于被申请人前述管辖权异议的意见，秘书处于同日将该文件转寄被申请人与仲裁庭。

2013 年 9 月 13 日，本会作出"〔2013〕沪贸仲字第 4801 号"《管辖权决定》，驳回了被申请人的管辖权异议，认定本案仲裁程序应继续进行。

2013 年 9 月 14 日，仲裁庭在本会所在地开庭审理本案。申请人和被申请人的仲裁代理人均参加了开庭。双方就本案的事实和法律问题作了陈述，对证据进行了质证，回答了仲裁庭的提问，进行了辩论，并发表了最后陈述意见。庭审结束前，仲裁庭对庭后仲裁程序的进行作出了安排。

被申请人代理人于 2013 年 9 月 27 日提交了代理意见及补充证据，秘书处于 2013 年 9 月 29 日将该材料转寄申请人及仲裁庭，并提请申请人对被申请人提交的补充证据发表书面质证意见。

申请人代理人于 2013 年 9 月 30 日提交了代理意见及补充证据，秘书处于 2013 年 10 月 8 日将该材料转寄被申请人及仲裁庭，并提请被申请人对申请人提交的补充证据发表书面质证意见。

申请人于 2013 年 10 月 14 日提交了对被申请人庭后提交的补充证据的质证意见，秘书处于 2013 年 10 月 15 日将该文

件转寄被申请人及仲裁庭。被申请人于 2013 年 10 月 22 日提交了对前述质证意见的评述意见，秘书处于 2013 年 10 月 24 日将该文件转寄申请人及仲裁庭。

被申请人于 2013 年 10 月 28 日提交了《关于请求进一步对本案证据进行说明》的函件，向仲裁庭请求再次开庭审理本案。秘书处于 2013 年 10 月 29 日将该文件转寄申请人及仲裁庭。申请人于 2013 年 11 月 4 日提交了对被申请人前述文件的评述意见。仲裁庭经合议决定本案于 2013 年 12 月 12 日进行第二次开庭，并委托秘书处于 2013 年 11 月 13 日将该开庭通知函寄双方当事人。

2013 年 12 月 12 日，仲裁庭在本会所在地第二次开庭审理本案。申请人和被申请人的仲裁代理人均参加了开庭。双方就本案的事实和法律问题进一步作了陈述，对补充证据进行了质证，回答了仲裁庭的提问，进行了辩论，并发表了最后陈述意见。庭审结束前，仲裁庭对庭后仲裁程序的进行作出了安排。

被申请人代理人于 2013 年 12 月 26 日提交了补充代理意见，秘书处于 2013 年 12 月 27 日将该文件转寄申请人及仲裁庭。申请人代理人于 2014 年 1 月 28 日提交了补充代理意见，秘书处于 2014 年 2 月 7 日将该文件转寄被申请人及仲裁庭。

经仲裁庭申请，本会秘书长根据《仲裁规则》第四十三条第（三）款的规定，同意延长本案裁决期限延至 2014 年 6

月 13 日止。

有关本案的一切法律文件、通知和材料均已由秘书处依照《仲裁规则》第六十条之规定，有效送达本案当事人和仲裁庭。

本案业已审理终结。仲裁庭根据已查明的事实和证据，以及应当适用的法律，对本案做出终局裁决。现将本案案情、仲裁庭意见及裁决分述如下：

## 一、 本案案情

（一）申请人在仲裁申请书中陈述的主要意见及仲裁请求事项

2010 年 5 月，申请人与被申请人签订了涉争《销售合同》，约定申请人向被申请人出售太阳能电池组件。《销售合同》第七条约定被申请人应当在货运提单上所列货物离港日起算的 60 天内付清货款。

2010 年 10 月 23 日，申请人按照《销售合同》向被申请人运送了总价为 646,191 美元的太阳能电池组件。2010 年 11 月 21 日，申请人再向被申请人运送了总价为 878,748 美元的太阳能电池组件。之后，申请人向被申请人提供了两批货物相关的发票、装箱单和提单。

根据《销售合同》第七条的约定，被申请人应当在提单

所列离港日后的 60 天内付清全部货款。因此，前述两批货物的货款支付截止日应分别为 2010 年 12 月 22 日和 2011 年 1 月 20 日。在上述截止日，被申请人未能按照《销售合同》的约定支付全部货款，总计拖欠 1,372,445.10 美元，且至今尚未偿还。

此外，根据《销售合同》第九条的约定，如被申请人未能按照合同及时支付全款而给申请人造成汇率损失的，由被申请人承担。即在货款支付截止日时中国人民银行的美元兑换人民币汇率较被申请人实际支付日的汇率有所贬值，由此造成的汇率损失应由被申请人承担。

为此，申请人在 2012 年 12 月 19 日和 2013 年 1 月 24 日两次向被申请人发出律师函，要求被申请人支付所欠货款。然而，迄今为止，被申请人仍未能偿还货款，亦未赔付由此给申请人造成的损失。申请人在仲裁申请书中提出的仲裁请求如下：

1、请求裁决被申请人向申请人支付两笔未付货款共计 1,372,445.10 美元（第一笔货款总额 646,191 美元，扣除被申请人已经支付的预付款后，被申请人尚欠 581,571.90 美元；第二笔货款总额 878,748 美元，扣除被申请人已付的预付款后，被申请人尚欠 790,873.20 美元），总计折合人民币 8,611,407 元（按中国银行 2013 年 3 月 7 日公布的美元兑人民币的中间折算价 6.2745 元计算）；

2、请求裁决被申请人向申请人支付上述未付货款截止日到实际支付日止的利息，暂计人民币 1,251,930 元（其中：第一笔货款的利息，从付款截止日的第二天 2010 年 12 月 23 日起暂计到 2013 年 3 月 7 日止，暂计人民币 543,454 元；第二笔货款的利息，从付款截止日的第二天 2011 年 1 月 21 日起暂计到 2013 年 3 月 7 日止，暂计人民币 708,476 元。以上总暂计利息人民币 1,251,930 元；请求计算至被申请人实际履行全部付款义务之日）；

3、请求裁决被申请人向申请人赔偿逾期付款给申请人造成的汇率损失人民币 464,816 元（其中：第一笔货款的汇率损失为人民币 216,403 元，第二笔货款的汇率损失为人民币 248,413 元；请求计算至被申请人实际履行全部付款义务之日）；

4、请求裁决被申请人承担申请人律师费共计人民币 250,000 元（250,000 元为暂计金额，当实际支出律师费超过 250,00 元时，请求裁决被申请人承担申请人实际的支出）；

5、请求裁决被申请人承担本案仲裁费。

申请人在第一次开庭时对前述第 1 项、第 3 项仲裁请求作了修改：第 1 项请求确认以美元计价；第 3 项请求变更为：请求裁决被申请人向申请人赔偿逾期付款给申请人造成的汇率损失人民币 463,779 元。截止日到 2013 年 3 月 7 日，汇率

起算日比之前计算移动了一天，计算日是 2010 年 12 月 22 日和 2011 年 1 月 20 日；汇率损失按照被申请人实际支付日计算。

（二）被申请人庭审时发表的答辩意见及第一次开庭后发表的代理意见

被申请人在庭审中口头发表了答辩意见，并于第一次开庭后提交书面代理意见，其主要观点如下：

1、被申请人与申请人存在长期合同关系，双方就质量标准和质保期达成合意。

被申请人与申请人之间存在长期合同关系。2009 年 7 月 7 日，被申请人与申请人签订《CO-BRANDING AGREEMENT》（下称："《联合品牌协议》"），合同期限为三年，双方约定了每一年的太阳能电池组件采购量。根据《联合品牌协议》的约定，双方在该合同有效期的三年内陆续签订了包括涉争《销售合同》在内的一系列的销售合同，确定了各个批次采购的组件型号、数量、价格、付款时间，交付时间。《联合品牌协议》中的 Purchase Order 条款约定: "Before every contract year starts, parties need to sign on the purchase contract for that period. If during that contract year there are additional orders from buyer, parties may have additional purchase contracts. Both year and additional contracts are as the integral parts of the OEM agreement"。可见，《联合品牌协议》有效期内双方订立的各个销售合同或订单均是在该长期采购

合同不可分割的组成部分。因此，被申请人与申请人之间存在长期、稳定的交易关系。《联合品牌协议》中有关质量保证的约定应适用于被申请人与申请人之间约定采购的所有批次、所有型号的产品。

双方约定了质量标准及质量保证条款。根据申请人向被申请人提供的《CSUN OEM 组件检验标准 Q/CSUN.J27.0002 V1.0》，其中，序号 2 第 2 项技术要求明确规定："颜色：组件整版电池颜色均匀一致，不允许电池片跳色"，第 3 项技术要求明确规定"电池裂纹（肉眼可见）、碎片不允许"。上述条款表示，申请人所提供的太阳能电池组件应符合颜色均匀，无裂纹、无碎片的质量标准，否则，应视为存在材质及工艺缺陷。《联合品牌协议》Warranty/Defective Products 条款约定："For warranty, free from defects in material workmanship: 5 years"。该条款表示，申请人承诺其销售给被申请人的产品在 5 年内不会出现材质与工艺缺陷。

此外，被申请人于 2010 年 5 月 5 日与申请人之间的邮件往来显示，申请人的销售经理再次通过邮件向被申请人发送了名称为"Limited Warranties for Photovoltaic Modules 2010"的质量保证。该质量保证也同样约定"CSUN warrants its MODULES, including field replaceable DC connectors and cables, to be free from defects in materials and workmanship under normal application, installation, use and service conditions. If MODULES fail to conform to this warranty, for a period

ending 60 months from date of sale to the original customer(CUSTOMER) as shown in stamped packing list of CSUN, CSUN will, at its option, either repair, replacement and refund the purchase price as paid by CUSTOMER"。由此可见，申请人承诺且被申请人接受，申请人就其销售给被申请人的产品存在的材质或工艺缺陷，在 5 年内承担修理、更换及退款的质量保证责任。

2、被申请人向申请人采购的产品存在质量缺陷，被申请人向申请人多次要求承担质量保证责任未果。

涉案合同及订单下的产品出现质量缺陷。根据被申请人提供的缺陷组件照片显示，《销售合同》下型号为 SSTWB190-72M 的组件存在明显的颜色不匀的现象，不符合申请人承诺的组件质量标准。另据申请人交付货物时提供的 Flash Testing Report（S69020043F-2），可以确定缺陷组件的型号对应《销售合同》下申请人所交付的组件型号。可见，《销售合同》下提供的 SSTWB190-72M 的组件产品存在明显的、目测可见的质量缺陷。

而后，被申请人又聘请权威的第三方检测机构对申请人交付的其他型号的组件进行了更加详细的检测，根据第三方检测机构 Celestica 出具的检测报告显示，申请人向被申请人交付的 SSTWB250-60M 型号的组件上存在目测可见的颜色不匀的情况。根据进一步 EL 光学检测，在出现蜗牛痕的组件上发现了清晰的裂痕。最终检测报告的结论是，蜗牛痕与裂痕

之间存在直接的关联，存在蜗牛痕的组件在 EL 光学检测中必然会被发现存在裂痕。而在有些组件上即便没有蜗牛痕，在 EL 光学检测汇总也发现存在裂痕。

而根据申请人交付货物时提供的 Flash Testing Report S69020043-7A, S69020043-7B 及 S69020043F-1（分别对应 S69020043 合同下的 PO1578 和 PO1559 订单），可以确定本案涉案合同及订单下申请人交付的货物均是 SSTWB250-60M 型号的组件。

出现质量缺陷的产品型号涉及被申请人与申请人之间多个订单批次。2010 年 12 月 10 日，被申请人首次针对申请人提供的组件汇总存在的上述材质与工艺缺陷，通过电子邮件向申请人提出了质量异议，并将发生质量问题的组件型号及有关数据和照片等详尽信息随邮件发送至申请人。2010 年 12 月 14 日，申请人回复邮件确认其收到了与该质量异议有关的所有文件。在随后的沟通中，申请人的销售经理向被申请人承诺会为被申请人更换缺陷组件，并且建议被申请人"无论最终协商结果如何"，被申请人应"尽快"为其客户更换存在缺陷的组件。于是，被申请人为其客户更换了被投诉的缺陷组件，但却迟迟没有收到申请人承诺的替代品。之后，被申请人又继续收到了多个客户的质量投诉，声称申请人所交付的多个批次的产品均先后出现不同程度的上述质量缺陷，从现场拍摄的照片中可以清晰地看到太阳能组件上存在明显的颜色不

匀及裂痕。2011 年 4 月 28 日，被申请人向申请人送达了正式的质量投诉，截止当时为止，被申请人为其客户更换缺陷组件而遭受的实际损失已达 2,417,335 美元，为此，被申请人根据申请人作出的质量保证，向申请人提出了提供替代产品或抵扣价款的要求。而后，被申请人又分别于 2011 年 9 月 15日及 2011 年 11 月 4 日，再次向申请人提出了质量投诉，其中附随了被申请人收到的多个客户相继向其提出的质量投诉，缺陷产品包括多个批次的相同型号的组件，以及同一批次中的不同型号的组件。

根据权威第三方检测机构的报告显示，上述质量缺陷只有正常安装在室外至少五个月后方才逐渐显现，因此不排除有更多已安装的组件产品会在未来被发现存在上述缺陷。截止 2011 年 4 月，根据被申请人对其几个客户已安装的组件系统进行的抽样检测，申请人交付的货物中出现颜色不均及裂痕的缺陷率已达到 65%。但时至今日，申请人对于上述质量投诉未采取任何的补救措施，怠于履行其在合同中约定的质量保证义务，申请人的行为已构成违约。鉴于申请人所交付的产品出现广泛的质量缺陷，且缺陷组件的规模有可能不断扩大，而申请人始终怠于履行约定的质保义务，被申请人有理由认为申请人的行为将构成对长期采购合同的根本违约。

3、被申请人有权按照申请人提供的质量保证要求申请人采取修理、更换或退款的救济措施，并有权按照《联合国国

际货物销售合同公约》（以下简称 "《公约》"）的规定要求申请人减少价款，提供替代品。

根据申请人的质量保证，被申请人有权要求申请人对缺陷产品进行更换或减低价款。根据双方订立的《联合品牌协议》及 CSUN 质量保证，在产品销售之日起的 60 个月内，对于申请人交付的产品所存在的材质和工艺缺陷，被申请人有权要求申请人修理、更换或退款。被申请人基于申请人的质量保证要求就未支付的合同价款进行抵扣，并非违约，而是行使合同约定的质量不符情况下的救济权利。而且，双方在销售合同中约定适用《公约》，根据《公约》第五十条的规定，如果货物不符合合同，不论价款是否已付，买方都可以减低价款。

被申请人拒付货款的行为不构成违约。《公约》第八十一条规定，一方当事人因其行为或不行为而使得另一方当事人不履行义务时，不得声称该另一方当事人不履行义务。被申请人提交的证据表明，本案争议的未付款订单下的产品存在明显的质量缺陷。根据申请人的质量保证，申请人应当对被申请人在质保期内提出的质量缺陷产品进行修理、更换或减少价款。然而，时至今日申请人既未按照质量保证对缺陷产品进行修理，也未按被申请人要求提供更换的替代品，因此使得被申请人不得不从尚未支付的货款中抵扣应当减少的价款。由于申请人不履行合同约定的质保义务，导致被申请人

无法履行支付货款的义务，申请人不应当声称被申请人不履行义务或构成违约。

被申请人由于申请人交付的产品不符遭受实际损失。由于申请人提交的产品普遍存在质量缺陷，被申请人将产品销售给其客户并安装使用后，相继收到多家客户的质量投诉。截止 2011 年 4 月 28 日为止，被申请人为其客户更换缺陷组件而遭受的实际损失已达 2,417,335 美元，远远超出了被申请人抵扣的未向申请人支付的货款。并且，被申请人收到的客户投诉还远不止于此。至 2011 年 9 月 15 日，又有多家客户针对从申请人处采购的产品提出了相同的质量缺陷。目前，被申请人因缺陷产品受损的金额还在继续扩大。对此，被申请人保留继续根据申请人作出的质量保证，要求申请人更换缺陷产品或退款的权利。

（三）申请人代理人于庭后提交的代理意见

申请人代理人亦于第一次开庭后提交了书面代理意见，其主要观点如下：

1、被申请人拒绝支付本案系争《销售合同》的全部货款，应承担相应的违约责任，赔偿申请人的所有损失。

《销售合同》约定申请人向被申请人出售太阳能电池组件，被申请人承担相应的付款责任。2010 年 9 月至 2010 年 11 月间，被申请人在《销售合同》下向申请人采购金额分别为 646,191 美元和 878,748 美元的两批太阳能电池组件。申请

人在收到了被申请人汇出的 10%预付款后，于 2010 年 10 月 23 日和 2010 年 11 月 21 日分别向被申请人发送了其所采购的太阳能电池组件。两次发货所对应的申请人商业发票号为 S69020043-6 和 S69020043-7。

　　申请人已全部履行了《销售合同》下的发货义务，但被申请人至今仍未能履行其付款义务，总计拖欠货款 1,372,445.10 美元。被申请人于第一次开庭庭审过程中，除认为拖欠金额应为 1,371,525 美元外，对申请人的上述主张不持异议。此外，被申请人至今尚未提交任何证据证明其实际拖欠的金额为 1,371,525.00 美元。

　　被申请人的违约行为给申请人造成了以下损失：（1）《销售合同》所欠货款： 1,372,445.10 美元；（2）利息损失：暂计至 2013 年 3 月 7 日止，利息损失人民币 1,251,930 元；（3）汇率损失：逾期付款给申请人造成的汇率损失，暂计至 2013 年 3 月 7 日，汇率损失人民币 463,779 元。被申请人未能按照合同约定向申请人支付全款，申请人提交本仲裁申请书之日以及本案第一次庭审之日的汇率较货款支付截止日的中国银行的美元兑换人民币汇率均有大幅贬值，因而给申请人造成了汇率损失。根据《公约》第七十四条所确立的"完全赔偿原则"，被申请人应当赔偿申请人的以上汇率损失。（4）律师费：申请人与其律师签订的法律服务合同的付费方式为有条件的封顶报价，封顶价为人民币 25 万元，截至申请人律师最

后一份账单日 2013 年 9 月 10 日，申请人已收到律师账单总计金额人民币 257,710 元。申请人因此请求裁决被申请人承担申请人律师费共计人民币 250,000 元，如果本案申请人最终实际支付的金额超过 250,000 元，申请人保留请求仲裁庭按最终实际支付的金额，要求被申请人作出相应赔偿的权利。（5）仲裁费：申请人已支付本案仲裁费人民币 225,782 元。

2、被申请人在 2013 年 9 月 14 日提交的证据《索赔函》中向申请人作出的赔偿主张，没有事实和法律依据，不应得到仲裁庭的支持。

被申请人在其 2011 年 4 月 28 日的《索赔函》中，主张申请人向其交付的部分太阳能电池组件存在质量瑕疵。但是，被申请人在该函中只字未提其所声称的质量瑕疵究竟为何种瑕疵，没有证明瑕疵确实是在申请人所售出的太阳能电池组件上发现的，所谓的瑕疵会对被申请人产生损失以及这些瑕疵严重到已无法使用而必须进行更换的程度，亦未提交任何太阳能电池组件已实际更换的证明。从而可见，被申请人没有证明申请人提供的货物的瑕疵已构成《公约》第二十五条的根本违约从而有权行使退款的权利，没有提交证据表明所声称的瑕疵货物数量确为《索赔函》中所列出的数字，瑕疵货物的单价价值以及被申请人确有实际支付过任何更换太阳能电池组件的劳工成本。甚至被申请人未能证明所附的《质保书》是申请人向被申请人出具的、针对本案系争的《销售

合同》项下货物的质量保证，或是针对《索赔函》中所涵盖货物的质量保证。

3、被申请人的赔偿主张，不能作为抗辩或反请求在本案中提出。

本案中，被申请人实际上是在主张产品质量的相关责任，要求申请人承担相应法律责任从而抵销被申请人在本案中应当支付的价款。然而，被申请人的该等主张不能在本案中作为抗辩或者反请求提出，主要理由如下：

被申请人主张的质量问题，即使按照其主张也系发生在本案《销售合同》之外的其他合同项下纠纷，并非本案审理范围，不应在本案中以抗辩或者反请求的方式解决。因此，从程序上看，被申请人该等主张和相应事实不应在本案中予以审理，其抗辩不应得到审理，反请求亦不应得到受理。

被申请人因所谓质量问题提出的索赔主张，并非其对申请人一项已经确定的到期债权，而是需要通过审理予以确认的待定事项。因此，其即使属于本案系争订单项下争议，亦不符合《中华人民共和国合同法》（以下简称"《合同法》"）中有关抵销的规定，不能直接在本案中通过抵销以抗辩的方式提出。

参照《最高人民法院关于审理买卖合同纠纷案件适用法律问题的解释》（以下简称"《审理买卖合同司法解释》"）第四十四条的规定，出卖人履行交付义务后要求买受人支付价

款的，买受人以出卖人违约在先为由主张出卖人应当支付违约金、赔偿损失等的，应当提起反诉。本案中，被申请人显然不是在消极抗辩，而是在积极向申请人主张给付并进一步要求抵销。被申请人的积极权利主张必须通过反请求或者另行起诉的方式予以提出，而不能仅通过抗辩的方式作出。本案中，从实体层面上看，因被申请人据以主张权利之订单并非本案系争订单，不符合中国法律有关反请求的条件，因此其无法在本案中提出反请求；从程序角度来看，因本案在2013年 3 月立案受理后期间历经半年多的时间内，被申请人均未提起反请求，这已经超过了《仲裁规则》和中国法律规定的反请求提起的时限要求，因此不应予以受理。

仲裁庭也在第一次庭审时明确表示不再受理被申请人提出的反请求。此外，考虑到被申请人早在第一次开庭审理前已经取得授权，却没有积极主张权利，却在延期后第一次开庭前最后一天完全没有任何理由地提起管辖权异议，希望拖延本案审限，不排除其反复拖延本案审理之嫌。有鉴于此，不论从法律规定和仲裁实践角度出发，还是从仲裁效率和公平的原则出发，均不应受理被申请人就所谓质量问题提出的抗辩或者反请求。

基于以上事实和理由，申请人请求仲裁庭，支持申请人要求被申请人支付剩余货款和相关赔偿的主张，并要求被申请人就其索赔主张，依照所基于的具体合同另行提起诉讼或

仲裁。

（四）被申请人代理人第二次开庭后提交的补充代理意见

被申请人代理人在第二次开庭后又提交了补充代理意见，其主要观点如下：

1、关于申请人与被申请人之间业务合作及发生争议的事实。

2009 年 7 月 7 日，双方签订《联合品牌协议》，同日，双方签订《S60100 号销售合同》，确定了采购第一批光伏组件的型号和数量。2010 年 3 月 1 日，双方签订《S69020036 号销售合同》。2010 年 4 月 9 日，双方签订《S69020042 号销售合同》。2010 年 5 月 5 日，申请人以邮件方式向被申请人发送质保书。2010 年 5 月 17 日，双方签订本案《销售合同》。2010 年 6 月 17 日，双方签订《S69020045 号销售合同》。

2010 年 12 月，被申请人收到客户投诉，被申请人向客户转卖的申请人生产的光伏组件存在质量问题。被申请人经现场检验，核实了光伏组件的缺陷情况，并于 2010 年 12 月 10 日以邮件方式向申请人提出质量异议，以邮件附件形式提供了与缺陷组件有关的数据及照片。双方经过沟通，2011 年 1 月 6 日，申请人销售经理 Sally Fan 建议，无论最终协商结果如何，被申请人应尽快为被申请人的客户更换存在缺陷的组件。被申请人遂于 2011 年 1 月 19 日根据客户 Mogonlia Energy 的要求更换了存在工艺缺陷的组件。

　　2011 年 1 月 26 日，被申请人再次通过邮件向申请人提出质量异议，并附上缺陷组件的照片。2011 年 4 月 3－14 日，被申请人又通过邮件向申请人提出质量异议，并提供了抽样检测的结果，光伏组件缺陷率已达到 65%。

　　2011 年 4 月 19－28 日期间，申请人在被申请人的催促下，派出相关人员 Lester（王兴磊）赴美至被申请人处就光伏组件发生质量问题了解情况。在申请人现场查验之后，被申请人当即于 2011 年 4 月 28 日向申请人发出了正式的索赔函。但申请人却始终没有给出解决方案，被申请人之后又分别于 2011 年 9 月 15 日、2011 年 11 月 4 日先后多次向申请人提出质量异议，要求申请人按照质保书履行质保义务，替换存在缺陷的光伏组件，但始终未得到申请人有效回应。可见，被申请人一直在向申请人提出质量异议，要求申请人承担质保义务，并非有意拖欠货款。

　　2、本案《销售合同》是分批次交付合同中的某一个批次。

　　被申请人与申请人的业务合作始于《联合品牌协议》，通过该长期采购协议，双方确定了在光伏组件上使用联合标识的合作事宜以及今后三年的总采购量。并且，基于该《联合品牌协议》，双方陆续签订了一系列的销售合同，以确定每次采购光伏组件的具体型号和数量。

　　可见，《联合品牌协议》所确定的合作目的是通过之后一系列的销售合同的履行来实现的。因此，本案《销售合同》

并非一个单独的合同。申请人与被申请人自 2009 年 7 月 7 日起签订的所有的合同，包括本案《销售合同》，应被视为一个整体适用《公约》关于分批次交付合同的规定。

3、申请人对其销售给被申请人的光伏组件应当承担质量保证责任。

申请人在庭审时一再否认质保书的存在，并认为即便质保书存在，被申请人所主张的缺陷并不影响光伏组件的正常使用，所以光伏组件并不存在质量缺陷。对此，被申请人认为：首先，从申请人提供的证据以及国际贸易的商业惯例来看，质保书是客观存在的。被申请人与申请人存在长期买卖光伏组件的合同关系，鉴于光伏组件的产品特性，双方对于质保不可能没有约定。事实上，申请人代理人在 2013 年 1 月 24 日向被申请人发出的律师函中第三段曾提到："*Please note that the* ***general warranty issued by CEEG*** *does not cover incidentals such as your labor costs.*" 由此可见，申请人代理人对质保书存在的事实以及质保书的具体内容是心知肚明的。其次，申请人的质保书适用于其生产的所有型号的光伏组件。被申请人在庭审中曾提交过两份从申请人处获得的质保书，虽然这两份质保书的出具人分别为申请人 CEEG 和被申请人的母公司 CSUN，但两份质保书的主要内容是一致的，都承诺对于组件上产生的材质和工艺缺陷质保 5 年。此外，在双方签订的《联合品牌协议》中，申请人也承诺了与质保书一致

的质保范围和期限。申请人提供的质保书适用于其生产的所有型号的光伏组件产品。再者，光伏组件上出现裂纹及蜗牛痕的现象属于质保书对材质及工艺缺陷的质保范围。申请人提供的质保包含两个部分，其一是针对材质和工艺缺陷的质保，其二是针对功率输出的质保。被申请人提供的组件检验标准明确要求光伏组件电池表面颜色应当均匀一致，并且不得存在裂纹。而蜗牛痕及裂纹的出现正是属于一种材质及工艺缺陷。无论裂纹及蜗牛痕是否影响光伏组件的功率输出，根据申请人在质保书中的承诺，申请人也应该就材质及工艺缺陷履行质保义务。在产品发生质量问题时，申请人对于处理质量问题采取拖延回避的态度，显然是违约在先。最后，Celestica 检测报告具有权威性。Celestica 实验室是 TUV Rheinland 实验室授权的，为光伏组件提供测试认证服务的专业机构。而 TUV Rheinland 实验室正是申请人提供的质保书中确定的检测机构。因此，Celestica 实验室与 TUV Rheinland 实验室对光伏组件测试结果具有同样的权威性。

4、被申请人以存在质量缺陷为由要求申请人减少价款等救济的主张属于抗辩。根据中国最高人民法院《审理买卖合同司法解释》第四十四条"出卖人履行交付义务后诉请买受人支付价款，买受人以出卖人违约在先为由提出异议的，人民法院应当按照下列情况分别处理：（一）买受人拒绝支付违约金、拒绝赔偿损失或者主张出卖人应当采取减少价款等补救

措施的，属于提出抗辩；（二）买受人主张出卖人应支付违约金、赔偿损失或者要求解除合同的，应当提起反诉"的规定，被申请人在本案中基于申请人产品存在缺陷而要求减少价款等救济的主张，属于抗辩而非反请求。

5、被申请人不应就未支付货款承担违约责任。申请人不履行质保义务在先，导致被申请人抵扣未支付货款以弥补缺陷产品造成的损失，根据《公约》第八十条的规定，申请人不得主张被申请人不履行合同义务或违约。因此，被申请人对于申请人因被申请人未支付货款而遭受的利息损失、汇率损失不承担违约责任。

（五）申请人代理人第二次开庭后提交的补充代理意见

针对被申请人提交的补充代理意见，申请人亦提交了书面补充代理意见，其主要观点如下：

1、本案系争《销售合同》合同完全独立于《联合品牌协议》，两者之间并无任何关联性。首先，被申请人未能提供《联合品牌协议》的原件，申请人对《联合品牌协议》的真实性不予认可。其次，《联合品牌协议》与本案系争《销售合同》显然也无任何关联性。《联合品牌协议》和《销售合同》中均无任何内容相互提及或引述，无从推断两者之间存在任何关系。并且，《联合品牌协议》本身条款自相矛盾，且与《销售合同》的条款也多处存在冲突。本案双方在 2010 年的实际交易情况，包括交货的种类、数量和付款方式，也均非依据《联

合品牌协议》执行，例如，双方在《销售合同》下的实际付款方式为：发货前买方支付 10%预付款，90%尾款在货物离港 60 天内付清；而不是《联合品牌协议》中所规定的"20%预付款，80%尾款 10 天内付清"或"100%全款 3 个月内付清"中的任何一种方式。故本案与《联合品牌协议》无关，根本无法得出所谓《销售合同》是《联合品牌协议》中某一批次的结论。

　　2、被申请人所谓的两份《质保书》均不具有真实性，不能作为本案认定事实的依据。被申请人认为双方之间对于质保存在约定的主要依据即其向仲裁庭先后提交的两份《质保书》。然而，对于第一份《质保书》（即"Limited Warranty for PV Modules"），其上没有任何一方的签章或签字，来源不明；对于第二份《质保书》（即"Limited Warranty for Photovoltaic Modules 2010"），其上也没有申请人签章或签字，且出具人为 China Sunergy (Nanjing) Co., Ltd.，并非申请人，同样与本案无关。故申请人对两份所谓《质保书》的真实性均不予认可，被申请人依据该等《质保书》主张质量问题不应予以采信。

　　3、Celestica 检测报告不具有权威性，如被申请人认为质量不符合合同约定，完全可以申请司法鉴定。被申请人在其代理意见中提出 Celestica 实验室是 TUV Rheinland 实验室授权的权威机构，但其对此未提供任何证据予以证明。事实上，对于双方争议的产品质量问题，被申请人完全可以在仲裁程

序中申请司法鉴定，而非仅仅提供一份其自行委托的机构出具的检测报告。

4、本案仲裁的裁决范围应当仅限于申请人所主张的货款争议，如被申请人主张质量缺陷赔偿，应当提出反请求或另行诉讼。首先，被申请人依据《审理买卖合同司法解释》主张减少价款属于抗辩而非反请求。然而，该等依据属于最高人民法院作出的司法解释，应当仅适用于其下属各级人民法院审理诉讼案件，而不适用于本案仲裁。其次，被申请人主张质量问题系主要依据其作为证据提交的《质保书》，而恰恰根据该质保书本身第 5 条的约定，质保承诺人与购买者有任何争议，应提交中国南京市有管辖权的法院审理，故仲裁庭对本案双方目前对该质保书而引起的争议，不具有管辖权。被申请人应当另案向南京有管辖权的人民法院起诉。再次，本案中被申请人未提出任何反请求主张质量缺陷赔偿，如仲裁委对相关质量争议予以裁决，显然将属于典型的超裁。因此，本案仲裁应当仅限于申请人所主张的货款争议，而不应当涉及质量争议。当然，这也并不会影响被申请人的任何实质权益，如被申请人欲基于质量问题主张赔偿责任，其完全可以另行起诉以维护其合法权益。

## 二、仲裁庭意见

（一）关于本案的法律适用

本案当事人签订的交易标的物为太阳能电池组件，交易跨越国境，涉争《销售合同》系国际货物销售合同；申请人的营业地位于中国，被申请人的营业地位于美国，双方当事人的营业地所属国均为《公约》的缔约国；《销售合同》第十五条约定："……准据法为《联合国国际货物销售公约》"；当事人均援引了中国法律的相关内容及法院的司法解释作为依据；所以，仲裁庭认为解决本案《销售合同》项下的争议应适用《公约》的规定，《公约》未规定的内容适用中国法律。

（二）关于涉争《销售合同》的效力

根据《公约》第四条规定："本公约只适用于销售合同的订立和卖方和买方因此种合同而产生的权利和义务。特别是：本公约除非另有明文规定，与以下事项无关：（a）合同的效力，或其任何条款的效力，或任何惯例的效力；……。"因此，关于涉争《销售合同》的效力问题，应适用中国法律作出判断。

仲裁庭注意到，本案《销售合同》分别有申请人加盖的公司公章和被申请人授权代表的签名，是双方当事人真实的意思表示，双方在仲裁过程中对合同的效力均不持异议，仲裁庭亦未发现合同内容存在与中国现行法律、行政法规关于合同效力的强制性规定相抵触而导致合同无效的情形。根据《合同法》第三十二条关于"当事人采用合同书形式订立合同

的，自双方当事人签字或者盖章时合同成立"以及该法第四十四条关于"依法成立的合同，自成立时生效"之规定，仲裁庭认为，本案涉争合同已依法成立并生效，对双方当事人均具有法律约束力，双方均应严格按照合同约定以及相关法律法规规定履行义务、主张权利和承担责任。

（三）仲裁庭查明的事实

仲裁庭核阅了双方当事人提交的证据材料，并听取了双方当事人关于《销售合同》履行情况的陈述，基于双方当事人的举证和质证意见，查明如下事实：

申请人与被申请人于 2010 年 5 月 14 日在上海签订了《销售合同》，合同约定申请人作为卖方向作为买方的被申请人出售太阳能电池组件。合同对货物运输、交货、货款支付、汇率风险、检验与索赔等均作了约定。

上述合同签订后，被申请人于 2010 年 10 月 8 日向申请人支付了 64,619.10 美元的货物预付款。申请人于 2010 年 10 月 23 日向被申请人运送了总价为 646,191.00 美元的太阳能电池组件。被申请人又于 2010 年 11 月 9 日向申请人支付了 87,874.80 美元的预付款。2010 年 11 月 21 日，申请人再向被申请人运送了总价为 878,748.00 美元的太阳能电池组件。

此后，被申请人并未根据《销售合同》第七条"货款支付：提单上所列离港日期后 60 天内回款"的约定向申请人支付上述两笔货物剩余 90% 的货款，至今尚欠申请人货款

1,372,445.10 美元未予偿还。

（三）本案争议焦点

基于上述事实及双方各自的观点，仲裁庭就本案争议焦点和仲裁庭的基本观点发表如下意见：

1、被申请人以货物质量缺陷为由要求申请人减少价款的答辩主张是否属于本案的审理范围，是否应另行提出诉请。

仲裁庭注意到，被申请人在《仲裁规则》规定的期限内未提出仲裁反请求，但其在答辩意见中指出申请人提交的货物存在质量瑕疵，进而提出应减少价款的答辩主张。

申请人对此认为，本案仲裁庭的审理范围应仅限于申请人所主张的货款争议，而不应涉及质量争议。被申请人有关基于质量缺陷而应予以赔偿的主张应当提出仲裁反请求或另行诉讼。被申请人则认为，被申请人以存在质量缺陷为由要求申请人减少价款等救济的主张属于抗辩而非反请求。

仲裁庭认为，对于被申请人以货物质量缺陷为由要求申请人减少价款主张的性质进行判断的前提是确定涉案《销售合同》的准据法就相关问题的规定。仲裁庭在前述意见中业已认定，涉案《销售合同》项下的争议解决应适用《公约》，《公约》未规定的事项应适用中国法律。仲裁庭注意到，《公约》对于国际销售合同中的买方有关货物质量的减价主张应是属于其行使抗辩权还是属于反请求的问题并没有作出规定；《合同法》对该问题也没有相关的规定；但当事人均援

28

引了中国最高人民法院《审理买卖合同司法解释》第四十四条规定："出卖人履行交付义务后诉请买受人支付价款，买受人以出卖人违约在先为由提出异议的，人民法院应当按照下列情况分别处理：（一）买受人拒绝支付违约金、拒绝赔偿损失或者主张出卖人应当采取减少价款等补救措施的，属于提出抗辩；（二）买受人主张出卖人应支付违约金、赔偿损失或者要求解除合同的，应当提起反诉"，该等规定可作为仲裁庭对本案相应问题考量的法律依据。本案现有材料表明，作为买方的被申请人主张基于货物质量瑕疵减少价款的主张应适用《审理买卖合同司法解释》第四十四条第（一）项的规定，以答辩方式提出即可，无须以反请求方式提出。

2、涉案《销售合同》项下申请人与被申请人在合同履行过程中相关违约责任的认定

从仲裁庭已经查明的事实来看，本案申请人在收到了被申请人分两批汇出的 10%预付款后，于合同规定的期限内向被申请人发送了《销售合同》项下的两批太阳能电池组件。申请人已履行了合同项下的发货义务，而被申请人至今尚未履行合同项下的付款义务。

但被申请人答辩称申请人的产品存在质量缺陷。根据申请人的质量保证以及《公约》的规定，被申请人有权要求申请人对缺陷产品进行更换或退款。申请人怠于履行质保义务，导致被申请人抵扣未支付货款以弥补缺陷产品造成的损失。

同时，由于申请人不履行约定的质保义务，导致被申请人无法履行支付货款的义务。申请人的行为构成对申请人与被申请人签订的《联合品牌协议》的根本违约。

仲裁庭对此注意到，被申请人称申请人与被申请人在双方签订的《联合品牌协议》中就质量标准和质保期达成合意，申请人向被申请人提供的质保书适用于其生产的所有型号的光伏组件产品，而根据被申请人聘请的第三方权威检测机构 Celestica 实验室对申请人交付的货物检测后出具的检验报告，申请人向被申请人交付的产品存在很多严重的质量问题。然而，申请人除了对被申请人提供的《联合品牌协议》和质保书的真实性及对 Celestica 检测报告的权威性均予以否定外，还指出《联合品牌协议》与本案系争《销售合同》并无任何关联性，其中有关条款不能适用于本案。

仲裁庭经对相关证据进行审查后认为，被申请人答辩所称申请人提交的货物存在严重质量问题的理由不能成立，理由如下：

第一，仲裁庭注意到，《销售合同》第 2 条第（6）款约定："用 LUMOS 和 CSUN 的联合商标和包装信息"，该条款提及的联合商标，应是被申请人主张的《联合品牌协议》中所涉的"商标"范畴。然而仲裁庭通过分别对于《销售合同》、《联合品牌协议》各自合同条款的分析，认为该两份合同在合同标的数量、交货和付款等重要条款上并不相同。上述两

份合同系各自独立的合同，各自约束不同的合同标的的权利和义务，无法得出被申请人辩称的《销售合同》为执行《联合品牌协议》项下的一个批次合同的结论。因此，被申请人援引的《联合品牌协议》项下有关质量保证和质保期的约定，对于本案涉争《销售合同》并无约束力。并且，仲裁庭获得管辖权的依据为双方当事人在《销售合同》中达成的仲裁条款，《联合品牌协议》并非本案的审理范围。

第二，被申请人主张依据其提交的《质保书》，申请人提供的《销售合同》项下的产品存在严重质量问题。仲裁庭注意到，被申请人提交了《质保书》作为证据，申请人对于该份证据的真实性不予认可，但申请人代理人曾于2013年1月24日致被申请人的函件中亦提及了质保书，在申请人未能提交反驳证据的前提下，申请人对该份《质保书》真实性异议的主张难以成立。仲裁庭审阅了《质保书》的内容，从被申请人提交的《质保书》的文字内容可见，其中承诺的质量保证5年的期限是针对消费者的，与被申请人在本案中要求减少价款的答辩主张无涉。此外，《质保书》还约定质保承诺人与购买者有任何争议应提交中国南京市有管辖权的法院审理，由此仲裁庭对涉及《质保书》而引起的争议不具有管辖权，如涉及《质保书》项下的争议，当事人可向有管辖权的人民法院另行寻求司法救济。

第三，双方签订的《销售合同》并未约定货物质量的检

验机构，依据现有证据查明的事实显示，被申请人在提请第三方检测机构 Celestica 实验室对申请人提供货物进行检测之前，未将检测机构等相关情况告知申请人或得到申请人的同意，而申请人提出该份检验报告所涉检样是否双方系争合同履行时的交付状态的异议，考虑到该份检验报告系在申请人提请仲裁后作出，距系争合同项下交货期已逾三年，仲裁庭难以仅凭该报告认定申请人交付的货物存在质量问题。

鉴于上述理由，仲裁庭对于被申请人辩称的申请人交付的货物存在严重质量问题的观点不予采信。仲裁庭根据现有的证据和查明的事实认为，本案申请人已履行了《销售合同》项下的发货义务，被申请人没有提供足够和合理的证据证明该履行行为存在过失和不当，而被申请人至今尚未履行合同项下的付款义务，已构成违约，应承担相应的违约责任。

（四）关于申请人的仲裁请求

1、关于要求被申请人向申请人支付两笔未付货款的仲裁请求

仲裁庭在前述意见中业已认定，在申请人已经履行《销售合同》项下交货义务的情况下，被申请人有义务向申请人支付全部货款。根据《公约》第六十二条"卖方可以要求买方支付价款、收取货物或履行他的其他义务，除非卖方已采取与此一要求相抵触的某种补救办法"的规定，对于申请人的该项仲裁请求仲裁庭予以支持。仲裁庭注意到就货款金额

而言，被申请人在答辩中提出应为 1,371,525 美元，该金额与申请人主张的剩余货款金额略有差异，但被申请人并未提交任何证据证明其有关货款金额的主张。仲裁庭通过对双方提交的证据材料的审查认定，被申请人所欠的货款应为 1,372,445.10 美元。

2、关于利息损失的仲裁请求

申请人请求裁决被申请人向申请人支付未付货款截止日到实际支付日的利息，暂计人民币 1,251,930 元（其中：第一笔货款的利息，从付款截止日的第二天 2010 年 12 月 23 日起暂计到 2013 年 3 月 7 日止，暂计人民币 543,454 元。第二笔货款的利息，从付款截止日的第二天 2011 年 1 月 21 日起暂计到 2013 年 3 月 7 日止，暂计人民币 708,476 元。以上总暂计利息人民币 1,251,930 元。请求计算至被申请人实际履行全部付款义务之日）。

被申请人拖欠货款已经构成违约，应对于其拖欠货款的行为承担违约责任，根据《公约》第七十八条："如果一方当事人没有支付价款或任何其他拖欠金额，另一方当事人有权对这些款额收取利息，但不妨碍要求按照第七十四条规定可以取得的损害赔偿"的规定，仲裁庭认为申请人要求被申请人支付利息损失的仲裁请求于法有据。

仲裁庭注意到，《销售合同》约定被申请人应当在货运提单上所列货物离港日起算的 60 天内付清货款，因此，鉴于两

批货物的发货日期分别为 2010 年 10 月 23 日和 2010 年 11 月 21 日,其货款支付截止日应分别为 2010 年 12 月 22 日和 2011 年 1 月 20 日。申请人主张第一笔货物利息起算日为付款截止日之次日 2010 年 12 月 23 日,第二笔货物利息起算日为 2011 年 1 月 21 日,仲裁庭对于该等起算时间予以采纳;然而,仲裁庭认为,申请人在第一项仲裁请求中已经明确两笔未付货款应以美元计价的情况下,却主张使用美元折换人民币的汇率、中国人民银行公布的人民币贷款利率来计算本项利息损失,该等利率主张存在错误,仲裁庭不予采纳,参考涉争《销售合同》履行期内的美元贷款情况,仲裁庭裁决以 2.53%的年利率计算上述两笔货款截止 2013 年 3 月 7 日止的利息,共计 74,991 美元。

综上,仲裁庭裁决被申请人应向申请人支付逾期付款利息 74,991 美元以及以 1,372,445.10 美元为本金,自 2013 年 3 月 8 日起算至实际付款日,以 2.53%年利率计算的逾期付款利息。

3、关于汇率损失的仲裁请求

申请人请求裁决被申请人向申请人赔偿逾期付款给申请人造成的汇率损失人民币 464,816 元(其中:第一笔货款的汇率损失为人民币 216,403 元,第二笔货款的汇率损失为人民币 248,413 元。请求计算至被申请人实际履行全部付款义务之日)。

仲裁庭注意到，《销售合同》第 9 条约定："如果本合同项下的结算货币是美元或欧元，且买方未能按照本合同及时付款。因此而给卖方所造成的汇率风险损失由买方承担。即在买方实际的延迟付款时根据中国银行的官方美元或欧元对人民币的汇率，与买方根据本合同应付款时的官方汇率相比较，如美元或欧元对人民币有贬值，由此而给卖方造成的损失由买方承担"，由此仲裁庭对于因被申请人逾期付款造成的申请人汇率损失的请求予以支持。根据仲裁庭前述认定，被申请人所欠第一笔货款金额为 581,571.90 美元，应于 2010 年 12 月 22 日前支付；第二笔货款金额为 790,873.20 美元，应于 2011 年 1 月 20 日前支付。仲裁庭经查中国银行美元对人民币汇率的相关数据，对于申请人汇率损失的计算方式予以认可，其应支付的汇率损失金额应为：（1）第一笔货款 581,571.90 美元，以裁决作出前一日中国银行公布的美元对人民币汇率与 2010 年 12 月 23 日的中行折算价 6.6466 之差计算的汇率损失人民币 287,878.09 元；（2）第二笔货款 790,873.20 美元，以裁决作出前一日中国银行公布的美元对人民币汇率与 2011 年 1 月 21 日的中行折算价 6.5886 元计算的汇率损失人民币 345,611.58 元。

4、关于律师费的仲裁请求

鉴于本案争议系由于被申请人违约行为而产生，考虑到申请人仲裁请求得到支持的程度，根据《仲裁规则》第四十

七条第（二）款"仲裁庭有权根据案件的具体情况在裁决书中裁定败诉方应当补偿胜诉方因办理案件而支出的合理的费用"的规定，被申请人应补偿申请人为本案而支出的律师费，仲裁庭裁决被申请人应补偿申请人律师费人民币 230,000 元。

5、关于本案仲裁费的承担。

考虑到申请人仲裁请求得到支持的程度以及引起本案争议的原因等因素，仲裁庭认为本案仲裁费由申请人承担 10％，被申请人承担 90%。

## 三、裁　决

仲裁庭裁决如下：

（一）被申请人应向申请人支付两笔未付货款共计 1,372,445.10 美元；

（二）被申请人应向申请人支付逾期付款利息 74,991 美元以及以 1,372,445.10 美元为本金，自 2013 年 3 月 8 日起算至实际付款日，以 2.53%年利率计算的逾期付款利息；

（三）被申请人应向申请人赔偿逾期付款造成的汇率损失人民币 633,489.67 元；

（四）被申请人应向申请人补偿为本案而支出的律师费人民币 230,000 元；

（五）本案仲裁费为人民币 225,782 元，由申请人承担

10%，即人民币 22,578.20 元，被申请人承担 90%，即人民币 203,203.80 元。鉴于申请人已全额预缴仲裁费，被申请人应支付申请人民币 203,203.80 元；

上述（一）、（二）、（三）、（四）、（五）项裁决所涉款项，被申请人应在裁决书生效之日起 15 日内一次性给付申请人。

本裁决为终局裁决，自作出之日起生效。

（此页无正文）

首席仲裁员：

仲　裁　员：

仲　裁　员：

二〇一四年六月　　日于上海



上海国际经济贸易仲裁委员会(上海国际仲裁中心)
Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)

<u>Translation</u>

NOTARIAL CERTIFICATE

(2014)H.D. Z.W.J.Z.No.2035

Applicant:

CEEG (Shanghai) Solar Science & Technology Co., Ltd.

Domicile: No. 5999, Guangfulin Rd., Songjiang District, Shanghai

Legal Representative: LU Tingxiu, male, Citizen ID No.: 321124196105293532

Entrusted Agent: ZHENG Lulu, female, Citizen ID No.: 342622198712111903

Notarized Matter: Arbitral Award

This is to certify that the foregoing document is a true copy of the original Arbitral Award issued to CEEG (Shanghai) Solar Science & Technology Co., Ltd. by Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center) on June 13, 2014 and the original copy is genuine.

YE Guojian (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
     (Seal)

October 9, 2014

# 公　证　书

（2014）沪东证外经字第 2036 号

申请人：中电电气（上海）太阳能科技有限公司
　　　　住所：上海市松江区广富林路五九九九号
　　　　法定代表人：陆廷秀，男，公民身份号码：
　　　　　　　　321124196105293532
　　　　委托代理人：郑露露，女，公民身份号码：
　　　　　　　　342622198712111903

公证事项：译文与原本相符
　　兹证明前面的英文译本内容与中电电气（上海）太
阳能科技有限公司的(2014)沪东证外经字第 2035 号公
证书中文原本相符。

中华人民共和国上海市东方公证处

公　证　员　



二〇一四年十月九日

⎰⎰49737298⎰



认 字 第 14032231-1 号

兹 证 明 前 面 文 书 上 公 证 处 的 印

章 和 公 证 员    叶国建      的 签 名

（ 印 章 ） 属 实 。

中华人民共和国外交部（ 310 ）

2014 年 10 月 09 日    上海

3318159

Consulate General of the )
United States of America )      SS;
in Shanghai, China          )

I,                              Consul of the
United States of America at Shanghai, China, duly
commissioned and qualified do hereby certify that
*Zhang, Ying*         , whose true signature
subscribed above was on *Oct. 9, 2014* the date
hereof, an officer of the Foreign Affairs Office
of the *Shanghai*       People's Government,
duly commissioned and qualified, to whose official
acts full faith and credit are due. For the contents
of this document I assume no responsibility.

IN WITNESS WHEREOF I have hereonto set my hand
and affixed the seal of the United States Consulate
General at Shanghai, China, this  *14th*  day of
*Oct.*, 20 *14* .

Vice Consul of the
United States of America

American Consulate General
Shanghai China

PRESIDENTIAL COMMISSIONS DO NOT EXPIRE