**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-3118-WYD-MEH

CEEG (Shanghai) Solar Science & Technology Co., Ltd.,

     Petitioner,

v.

LUMOS LLC, now known as LUMOS SOLAR LLC,

     Respondent.

_____

**RESPONDENT'S MOTION TO DISMISS PETITION
TO CONFIRM ARBITRATION AWARD AND OPPOSITION TO
PETITIONER'S MOTION FOR ENTRY OF JUDGMENT**

_____

Respondent LUMOS LLC, now known as LUMOS SOLAR LLC ("LUMOS"), files this Motion to Dismiss Petition to Confirm Arbitration Award and Opposition to Motion for Entry of Judgment ("Petition") submitted by CEEG (Shanghai) Solar Science & Technology Co., Ltd. ("CEEG").

## I.     INTRODUCTION

Federal policy favors the enforcement of private agreements to arbitrate. However, that policy does not require a court to validate and enforce an award arising from an arbitration proceeding that does not comply with the terms of the arbitration agreement between the parties. *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 843-44 (9th Cir. 2010) (concluding that arbitration was not conducted in accordance with parties' arbitration clause and reversing district court's confirmation of arbitral award); *Encyclopaedia Universalis S.A. v. Encyclopaedia*

*Britannica, Inc*., 403 F.3d 85, 91-92 (2005) (affirming district court's refusal to confirm arbitral award on grounds that appointment of third arbitrator did not comply with terms of parties' arbitration agreement).   The award Petitioner is asking this court to confirm, and thereby validate, is just such a case.   CEEG failed to comply with the terms of the arbitration agreement between the parties in at least two ways: (1) CEEG refused to engage in "friendly negotiations" prior to initiating the arbitration as mandated by the governing arbitration clause, and (2) the notice of arbitration sent to LUMOS was written entirely in Chinese, contrary to the requirements of the agreement between the parties and the parties' prior dealings.   These violations of the express terms of the relevant agreements resulted in a lost opportunity for the parties to resolve their differences without incurring the time and expense of an arbitration proceeding and in LUMOS being deprived of basic due process.

The only notice of the arbitration served on LUMOS was in Chinese.   LUMOS is not familiar with the Chinese language, a fact of which CEEG was well aware.   It was for that reason that the master agreement between the parties expressly required that documentation, notices, judicial proceedings, and <u>arbitration</u> between the parties be conducted in English.   LUMOS never agreed to the service of any notices—much less legal notices—in Chinese.   Further, all communications between the parties and their counsel prior to the Notice of Arbitration had been entirely in English.   As a result of the Notice being served in Chinese, LUMOS was required to find a suitable person to translate and explain the contents of the arbitration notice to LUMOS, and then identify and engage counsel to advise LUMOS regarding the arbitration procedures contained in the Notice, consider and explain the claims made by CEEG, and prepare the LUMOS defense.   While LUMOS was diligently seeking the assistance it needed, CEEG proceeded to work with CIETAC to appoint the entire arbitration panel with no input from

LUMOS whatsoever.  LUMOS was therefore deprived of the opportunity to appoint an arbitrator (and to consult with CEEG to appoint the chief arbitrator) to the three-person tribunal that rendered the award.  Despite the parties' earlier agreement to English as the choice of language in their dealings, the arbitration also was conducted in Chinese.

Accordingly, CEEG cannot show that LUMOS received notice reasonably calculated to apprise LUMOS of the pendency of the arbitration or that the arbitration itself was conducted in accordance with the agreement of the parties, and the Court should further refuse to enforce the arbitration award on those grounds.

In further support of this Opposition, LUMOS would respectfully show the Court the following:

## II.    FACTUAL BACKGROUND

Founded in 2007, in Boulder, Colorado, by a group of local installers of solar energy products, LUMOS is dedicated to providing high-value solar energy products and quality, cost effective solar technology solutions to meet America's ever-increasing energy demands. Franklin Decl., ¶ 3.   CEEG is a Chinese company based in Shanghai that develops solar panel products. *Id*. at ¶ 4.  CEEG is a wholly owned subsidiary of China Sunergy Co. Ltd. ("CSUN"), a specialized solar cell and module manufacturer. *Id*.  CEEG and LUMOS entered into a Co-Branding Agreement, effective June 29, 2009, and a series of subsequent sales contracts pursuant to which LUMOS contracted to buy and CEEG contracted to sell certain solar technology. *Id*. at ¶¶ 4-5. [1]

The Co-Branding Agreement operated as a master agreement governing transactions between CEEG and LUMOS, and provided that a series of individual sales contracts with some

---

[1] A short summary of the underlying background facts of the original dispute is set forth here to provide the Court with context and because many of these facts have bearing on LUMOS' asserted defenses regarding failure to engage in friendly negotiations and failure to comply with the parties' arbitration agreement.

additional terms would be entered into between the parties going forward.  *See, e.g., id*. at ¶ 5, Ex. A at 3 ("The price to be paid by LUMOS to CEEGSST for the Product refers to individual contracts.") & 6 ("Even when this Agreement is terminated, cancelled or expires, any individual contract according to this Agreement of which the fulfillment date is beyond the termination, cancellation, or expiration date shall survive this Agreement until the date of its final fulfillment."). Under the Co-Branding Agreement, CEEG warranted that all goods delivered would "conform in respect of quality, specification and packaging, with the stipulations in each contract, relying datasheets of the goods and all other specifications between the two parties in written form." *Id*. at ¶ 5, Ex. A at 4 ("Warranty/Defective Products"). CEEG sent LUMOS an Inspection Standard for Modules that provided, in relevant part, that the "whole solar cell panel should have uniform color; different color solar cell can not exist in the same panel." *Id*. at ¶ 6, Ex. B.

> The Co-Branding Agreement contains an arbitration clause, which provides:

> All disputes in connection with this agreement or the execution thereof **shall be settled through good faith negotiations**.  In case no settlement can be reached, the case may then be submitted for arbitration to the China International Economic and Trade Arbitration Commission Shanghai Commission in accordance with its arbitration rules.  The arbitration shall take place in Shanghai and the decision of the Commission shall be final and binding upon both parties; neither party shall seek recourse to a law court or other authorities to appeal the decision.  The arbitration fee shall be borne by the losing party.

*Id*. at ¶ 5, Ex. A at 6 (emphasis added).  This is a classic broad form arbitration clause, which brings into its purview any dispute related to the Co-Branding Agreement.  The parties' Co-Branding Agreement also included a "Choice of Language" clause, which provided:

> The Parties hereby acknowledge and agree that they have mutually required that this Agreement *and all documentation, notices, judicial proceedings, and dispute resolution and arbitration entered into, given, instituted pursuant to, or relating to, this Agreement be drawn upon in the English language*.  Any translations of this Agreement or its attachments that are provided are done solely

for the convenience of Seller and, in all cases, the English language version of such documents shall govern.

*Id*. at ¶ 5, Ex. A at 1 (emphasis added). The initial term of the Co-Branding Agreement was three years from the Effective Date (*i.e*., June 28, 2012). *Id*.

Pursuant to the Co-Branding Agreement, LUMOS and CEEG entered into a number of subsequent sales contracts, including the sales contract at issue in this dispute, which the parties entered into on May 17, 2010 ("Sales Contract"). The terms of the Sales Contract supplemented, but did not conflict with, the terms of the Co-Branding Agreement. The arbitration clause in the Sales Contract provides:

> Any dispute arising from or in connection with this Contract **shall be settled through friendly negotiations**. Failing that, then shall be submitted to China International Economic and Trade Arbitration Commission Shanghai Subcommission for arbitration which shall be conducted in accordance with the commission's arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding upon both parties. The applicable law shall be in the United Nations Convention on Contracts for the International Sale of Goods.

Pet., Ex. 2 (Qian Decl.), Ex. C at § 15 (emphasis added).[2] Accordingly, read together, the relevant arbitration clauses (i.e., "the arbitration agreement") required that LUMOS and CEEG make a good faith effort to settle any disputes related to the Co-Branding Agreement <u>and</u> the Sales Contract through friendly negotiations as a precondition to instituting arbitration.

LUMOS received one shipment of solar battery modules from CEEG per the Sales Contract on October 23, 2010, and a second shipment on November 21, 2010. Franklin Decl., ¶ 7. On or before December 10, 2010, LUMOS provided notice to CEEG and CSUN that LUMOS was filing a claim for defective modules (due to discoloration, streaking, burning, and cracking of the cells), and noted in correspondence with Sally Fan, a sales manager for CSUN/CEEG, that

---

[2] The Sales Contract contains a confidentiality provision and, accordingly, was filed as a restricted document; however, the parties have agreed that the arbitration clause in the Sales Contract is not confidential and it previously has been set forth in the pleadings in this case without restriction. Pet., Ex. 2 (Qian Decl.), Ex. C at § 15.

this was a "very urgent matter." *Id*. at ¶ 8, Ex. C.  In a follow-up e-mail, dated December 23,

2010, LUMOS' President and Chief Executive Officer Scott Franklin wrote to Ms. Fan that

LUMOS would not make any payments on the Sales Contract until LUMOS had a clear

understanding as to how LUMOS' warranty claim would be handled.  *Id*. at ¶ 9, Ex. D.  On

January 6, 2011, Ms. Fan wrote to Mr. Franklin, advising him:

> Scott, I think LUMOS may replace defective panels right away and please keep
> all defective panels replaced in your warehouse.  Basically there is no problem for
> replacing.  The issue is, right now, Stephen and Doctor Zhao are not in China.
> We have to wait until next Monday at least to have their signature.  Replacing
> panels definitely need to be done ASAP, no matter what is final settlement.

*Id*. at ¶ 10, Ex. E.  LUMOS subsequently replaced the defective modules with non-defective

modules in LUMOS' inventory, but never received the promised substitutes from CEEG or

CSUN.  *Id*. at ¶ 10.  Mr. Franklin sent another follow-up e-mail to LUMOS' contacts at CEEG

and CSUN on January 26, 2011, noting the lack of "any response or input from any senior

management, engineering support, or quality control" at CEEG and CSUN regarding LUMOS'

claim for defective modules.  *Id*. at ¶ 11, Ex. F.

On April 28, 2011, Mr. Franklin sent a formal letter to Thomas Liu of CSUN, further

outlining LUMOS' workmanship warranty claim and providing additional supporting

documentation.  *Id*. at ¶ 12, Ex. G.  In May 2011, Xinglei ("Lester") Wang of CSUN performed

on-site inspections of the defective modules and confirmed to LUMOS that the modules he

inspected were defective.  *Id*. at ¶ 13.

On October 30, 2011, Mr. Franklin sent an e-mail to Willis He, the Chief Executive

Officer of CSUN USA, noting the need to come to a resolution on the warranty issue.  *Id*. at

¶ 14, Ex. H.  In response, copying David Shieh, Mr. He wrote:

> Scott, I owe an update.  We had an internal discussion last week regarding
> Lumos.  David has been travelling in US after SPI and he has the data disc and

6

will drive a few meetings to address the issue.  I have raised your concern about workmanship instead of performance.  We will look into it.  David, please have it prioritized and organize meeting internally.

*Id*.   However, despite Mr. He's representations, LUMOS heard nothing further from CEEG or CSUN regarding its warranty claim until December 19, 2012.  *Id*. at ¶ 14.

After more than a year of silence regarding the warranty issue, on December 19, 2012, counsel for CEEG sent a letter to LUMOS demanding payment.  *Id*. at ¶ 15.  Mr. Franklin sent a response, on December 22, 2012, noting that LUMOS had been withholding payment pending resolution of the warranty issue.  *Id*. at ¶ 15, Ex. I.  On January 24, 2013, CEEG's counsel, M.M. Utterback and Simin Yu of King & Wood Mallesons, sent a second demand letter by e-mail to Mr. Franklin, wherein they stated:

> We hereby request that you immediately pay CEEG in full the past due principal amount of US$1,372, 445.10.  ***Failure to pay or make arrangement to pay before January 31, 2013 will result in our proceeding to file a claim on behalf of CEEG with CIETAC***.

*Id*. at ¶ 16, Ex. J (emphasis added).   However, the parties' arbitration agreement requires that CEEG and LUMOS make a good faith effort to settle dispute through friendly negotiations as a precondition to instituting arbitration.  Pet., Ex. 2 (Qian Decl.), Ex. C at § 15; Franklin Decl., ¶ 5, Ex. A at 6 (emphasis added).

Accordingly, later the same day, Mr. Franklin sent a response by e-mail on behalf of LUMOS, wherein he noted CEEG's failure to engage in "friendly negotiations" as required by the parties' arbitration agreement.  Franklin Decl., ¶ 17, Ex. K.  Three months later, in April 2013, LUMOS received a document written in Chinese.  *Id*. at ¶ 18, Ex. L.  On May 7, 2013, in a further attempt to engage CEEG in "friendly negotiations" per the Sales Contract, Mr. Franklin sent Ms. Utterback an e-mail containing an offer for settlement of the dispute and forwarding the document written in Chinese that LUMOS had received, noting "We do not speak Chinese nor

can we read the attached document." *Id*. at ¶ 19, Ex. M.  Later that evening, Ms. Utterback

replied:

> Please note that the letter you received was from CIETAC, the arbitration institution to which Lumos agreed in its sales contracts with CEEG (Shanghai) Solar Science Technology Co., Ltd.  The contractual arbitration clause did not specify a language for the arbitration and the CIETAC default language is Chinese.[3]   Your company has been sued in arbitration in China.  I recommend you seek counsel and avoid the risk of an adverse award for failure to defend your company in the arbitration.

*Id*. Ms. Utterback further noted that she would discuss LUMOS' settlement offer with her client.

*Id*.  Significantly, Ms. Utterback failed to mention that, under the CIETAC rules, a very short,

15-day clock now was running for LUMOS' participation in the selection of the arbitral tribunal.

Furthermore, despite her representation that she would discuss LUMOS' settlement offer with

CEEG, Ms. Utterback did not send any response from CEEG to LUMOS' proposal until

LUMOS sent a follow-up inquiry on May 19, 2013, at which time Ms. Utterback replied that

CEEG had rejected the proposal.  *Id*. at ¶ 20 & Ex. M.   CEEG did not provide a counter-

proposal. *Id.*

       During this time, LUMOS also worked to find a suitable person to translate and explain

the contents of the arbitration notice and to engage the appropriate counsel to prepare its defense.

*Id*. at ¶ 21.  On June 20, 2013, Mr. Franklin sent a letter to CIETAC, explaining LUMOS'

difficulties in translating CIETAC's correspondence and requesting additional time to prepare its

defense and to explore settlement with CEEG.  *Id*. at ¶ 21, Ex. N.  Although CIETAC agreed to

an extension of the first hearing date for the arbitration, CEEG did not engage in any informal

settlement negotiations with LUMOS.  *Id*. at ¶ 21.

---

[3]  The Co-Branding Agreement—the master agreement between the parties—contained a choice of language provision specifying English, which expressly applied to any arbitration between the parties relating to the agreement.  Franklin Decl., ¶ 5, Ex. A at 1.  The dispute here clearly relates to the Co-Branding Agreement, as it concerns a Sales Contract entered into by the parties pursuant to the Co-Branding Agreement.

Furthermore, LUMOS was unable to appoint an arbitrator (or to consult with CEEG on the appointment of the chief arbitrator) to the three-person tribunal. *Id*. at ¶ 22. The CIETAC rules provide that, unless otherwise agreed by the parties, the arbitral tribunal shall be composed of three arbitrators. CIETAC Arbitration Rules, Art. 23 ("Number of Arbitrators"), § 2 (May 1, 2012). Under the rules, within 15 days from the date of receipt of the Notice of Arbitration, the Claimant and the Respondent are to each nominate, or entrust the Chairman of CIETAC to appoint, an arbitrator, failing which the arbitrator shall be appointed by the Chairman of CIETAC. *Id*. at Art. 25 ("Three-Arbitrator Tribunal"), § 1. Within that same 15-day time period, the parties are to jointly nominate, or entrust the Chairman of CIETAC to appoint, the third arbitrator, who will act as the presiding arbitrator on the tribunal. *Id*. at § 2. Here, because the arbitration notice was written only in Chinese, the 15-day deadline had elapsed by the time LUMOS had been alerted to the significance of the notice and was able to have the arbitration notice translated into English and to engage appropriate counsel. Franklin Decl., ¶ 22. Accordingly, although CEEG was able to appoint an arbitrator to the tribunal, LUMOS was not able to do so.

LUMOS filed an objection to the jurisdiction of the arbitral tribunal and specifically noted that LUMOS did not accept the constitution of the arbitral tribunal appointed by the Commission and reserved the right to move to vacate the arbitral award on the grounds that included the composition of the arbitral tribunal. *Id*. at ¶ 22. LUMOS' objection to jurisdiction was rejected by the arbitration tribunal on September 13, 2013. The panel subsequently issued the award that CEEG now seeks to enforce in Colorado.

### III.   GOVERNING LAW

The United States and China both are signatories to the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").  "The New York

Convention provides a carefully structured framework for the review and enforcement of

international arbitral awards." *First Investment Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703

F.3d 742, 748 (5th Cir. 2012).  The Convention includes seven potential grounds upon which a

court may refuse to recognize and enforce a foreign arbitration award, including:

- The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

- The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties.

NEW YORK CONVENTION, art. V(1)(b) & (d); *see also Polimaster Ltd.*, 623 F.3d at 836 (9th Cir.

2010) ("The New York Convention enumerates seven defenses to the recognition or enforcement

of an arbitral award.").  The Convention "recognizes the central role of the parties in fashioning

the arbitration procedure, and provides sanctions for failure to adhere to the agreed procedures"

and, accordingly, courts cannot simply "overlook agreed-upon arbitral procedures in favor of the

*enforcement* of an arbitration award." *Polimaster Ltd.*, 623 F.3d at 841 (internal quotations

omitted) (emphasis in original).  Furthermore, a party's participation in an arbitration proceeding

does not preclude that party from subsequently challenging enforcement of an award under the

Convention. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 377 F.3d 1164, 1171

(11th Cir. 2004) (noting that contrary holding would place party objecting to arbitration in

"untenable position").

Here, because CEEG not only failed but refused to enter into "friendly negotiations" prior

to filing the claims in arbitration, because LUMOS was not given proper notice of the arbitration

proceedings, and because the arbitral procedure was not conducted in accordance with the agreement of the parties, the Court should refuse to enforce the international arbitral award at issue.

## IV.    ARGUMENT AND AUTHORITIES

**A.    CEEG did not make a good faith effort to settle dispute through "friendly negotiations," as required by the Sales Contract.**

To determine whether the arbitral procedure was conducted in accordance with the agreement of the parties, a court looks to the language of the parties' arbitration agreement. *Polimaster Ltd.*, 623 F.3d at 836.  As noted by the Second Circuit Court of Appeals, in affirming a district court's refusal to enforce a foreign arbitration award where the tribunal failed to comply with requirements of the parties' arbitration clause, "While we acknowledge  that there is a strong public policy in favor of international arbitration, we have never held that courts must overlook agreed-upon arbitral procedures in deference to that policy … the federal policy is simply to ensure the enforceability, ***according to their terms***, of private agreements to arbitrate." *Encyclopaedia Universalis S.A.*, 403 F.3d at 91 (2005) (emphasis in original) (quoting from *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)) (internal quotations and citations omitted).

Here, the terms of the arbitration clause in the Sales Contract clearly provide that entering into "friendly negotiations" for the settlement of a dispute is a condition precedent to instituting arbitration.  The Co-Branding Agreement also contains an arbitration clause which, although worded slightly differently, is nearly identical in substance and provides:  "All disputes in connection with this agreement or the execution thereof shall be settled through good faith negotiations."  Franklin Decl., ¶ 5, Ex. A at 6.  Read together, as they should be here because the agreements operated jointly to govern the transaction at issue, the Co-Branding Agreement's

arbitration clause and the Sales Contract's arbitration clause show that the parties intended that "friendly negotiations" would be negotiations conducted in good faith. The obligation to negotiate in good faith generally prevents one party from "renouncing the deal, abandoning negotiations, or insisting on conditions that do not conform to the preliminary agreement." *Cf. A/S Apothekernes Laboratorium for Specialpreaeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 158 (7th Cir. 1988) (enforcing obligation to negotiate in good faith imposed by letter of intent). Here, CEEG not only abandoned negotiations in order to institute arbitration—CEEG never even engaged in such negotiations.

In LUMOS' response to the January 24, 2013 demand letter sent by CEEG's counsel, Mr. Franklin specifically cited CEEG's failure to engage in "friendly negotiations" as required by the Sales Contract. Franklin Decl., ¶ 17, Ex. K. However, CEEG did not take any action to rectify this deficiency prior to instituting arbitration. In his subsequent June 20, 2013 letter to CIETAC, Mr. Franklin noted that LUMOS was seeking an extension on the first arbitral hearing, in part, to discuss settlement with CEEG; however, although the extension was granted, no informal settlement negotiations took place. *Id*. at ¶ 21, Ex. N.

Accordingly, CEEG failed to comply with a condition precedent to instituting arbitration and the Court should refuse to enforce the arbitration award on that basis.

**B.      LUMOS did not receive proper notice of the arbitration proceedings, and the arbitration was not conducted in accordance with the parties' agreement.**

CEEG and CIETAC failed to provide notice of the arbitration to LUMOS in English, which deprived LUMOS of the opportunity to appoint one arbitrator to the three-person tribunal and to consult with CEEG on the appointment of the chief arbitrator. The notice of arbitration sent to LUMOS was in Chinese and no English translation was provided for reference. Franklin Decl., ¶¶ 18-19 & Ex. L. LUMOS does not have any knowledge of the Chinese language and

never agreed to service of process or any other notification in Chinese. *Id.* at ¶ 18.   All previous correspondence between the parties had been in English.   *Id*.   In fact, the Co-Branding Agreement—the master agreement between CEEG and LUMOS—includes a "choice of language" provision that designates <u>English</u> as the language to be used in all documentation and in any related arbitration.  *Id*. at ¶ 5, Ex. A at 1 ("Choice of Language").   Nevertheless, CEEG's counsel did not send notice to LUMOS in English regarding the submission and grant of CEEG's application for arbitration.  *Id.* at ¶ 18.   When LUMOS sent an inquiry to CEEG's counsel regarding the notice, Ms. Utterback claimed that there was no choice of language between the parties related to arbitration (completely disregarding the "Choice of Language" clause in the Co-Branding Agreement) and that, therefore, CIETAC's default rules, which provided that the arbitration be conducted in Chinese, applied.  *Id*. at ¶ 19, Ex. M.

In a very similar case, a district court refused to enforce an arbitration award obtained in China, finding that, because the United States-based respondent was <u>not</u> notified of the arbitration in English, the respondent did not receive due process.  *Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. v. P & S Int'l, Inc*., No. 08-1292-HU, 2009 WL 2997184, at *4-5 (D. Or. Sept. 16, 2009).[4]   The court rejected the petitioner's arguments that respondent received sufficient notice because it was aware of the dispute, previously had agreed to arbitrate in China under the rules of the Chinese commission, and had received copies of the commission's rules and the list of arbitrators in English, concluding:

---

[4] The Article V(1)(b) defense under the Convention permits courts in the United States to apply our standards of due process when evaluating whether a party was unable to present its case. *E.g., Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145-46 (2nd Cir. 1992) (affirming district court's refusal to enforce arbitration award where party received conflicting instructions from tribunal regarding proper presentation of its evidence, resulting in disallowance of certain claims by tribunal).  Accordingly, if the party objecting to enforcement of the award, "was denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b)." *Id*. at 146.  Here, because the lack of proper notice denied LUMOS of its opportunity to appoint one arbitrator and to consult in the selection of the chief arbitrator, LUMOS was denied the opportunity to be heard at "a meaningful time" in the arbitration.

> While these circumstances could lead to the inference that [respondent] knew it had agreed to arbitrate disputes with [petitioner] in China, and had reason to suspect that arbitration proceedings in China might be brought against [respondent] by [petitioner], they do not generate the inference that [respondent] had actual knowledge that [petitioner] had commenced an arbitration proceeding, to take place on a particular date in a particular place. Nor does the contract [with respondent] contain a provision under which [respondent] agreed to service of process in Chinese.

*Id*. at *4. The facts of this case present an even stronger basis for refusing enforcement of the arbitral award as there was, in fact, a governing choice of language provision between the parties that specified that any notices be provided in English (and that the arbitration itself should be conducted in English).

By the time that LUMOS was able to find a suitable person to translate and explain the contents of CIETAC's notice to LUMOS, the company had already missed a significant deadline in the arbitration. Specifically, the CIETAC Arbitration Rules provide parties only <u>15 days</u> following a respondent's receipt of the Notice of Arbitration to select their arbitrators. CIETAC Arbitration Rules, Art. 23 Art. 25, §§ 1-2. Here, a three-arbitrator tribunal tried the case. Docket 2-4 (Arbitral Award) at 3. CEEG appointed one arbitrator and, because LUMOS was not able to provide its selections within the 15-day deadline, the Director of the Commission selected the other two arbitrators on the tribunal. *Id*. Accordingly, failure to provide notice to LUMOS in English deprived LUMOS of its ability to participate in selection of the tribunal.

The Convention expressly recognizes the significant impact that a party's participation in the selection of the arbitration panel has on its opportunity to be heard by providing that failure to give proper notice of the appointment of an arbitrator constitutes grounds for refusing to enforce a foreign arbitration award. NEW YORK CONVENTION, art. V(1)(b); *see also, e.g., Encyclopaedia Universalis S.A.*, 403 F.3d at 91 (noting that Article V of the New York Convention "itself suggests the importance of arbitral composition" and affirming district court's

refusal to confirm arbitral award where appointment of third arbitrator was "premature"). Furthermore, the arbitration itself was conducted in Chinese—not in English, as provided by the Co-Branding Agreement—and so was not conducted in accordance with the agreement of the parties.

Accordingly, the Court should further refuse to enforce the arbitration award on these grounds.

## V.    CONCLUSION

For the reasons set forth above, Respondent LUMOS respectfully requests that the Court deny Petitioner CEEG's Petition to Confirm Arbitration Award and for Entry of Judgment.

Respectfully submitted this 7th day of January, 2015.

s/ Meghan Paulk Ingle
James R. Nelson
Texas State Bar No. 14899800
jr.nelson@dlapiper.com
**DLA PIPER US LLP**
1717 Main Street, Suite 4600
Dallas, Texas 75201
(214) 743-4500 (telephone)
(972) 813-6261 (facsimile)

Meghan Paulk Ingle
Texas State Bar No. 24036821
meghan.ingle@dlapiper.com
**DLA PIPER US LLP**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
(512) 457-7000 (telephone)
(512) 457-7001 (facsimile)

*ATTORNEYS FOR RESPONDENT*
*LUMOS LLC now known as* **LUMOS SOLAR LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 7, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule D.C.COLO.LR 5.1(d).


/s/ Meghan Paulk Ingle
Meghan Paulk Ingle